IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| DEBORAH WEYMOUTH and JAMES REDFORD, on behalf of themselves and others similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>COUNTY OF HENRICO, VIRGINIA<br><br>                Defendant. | Civil Action No. <u>3:14-CV-00419</u> |

**OBJECTION TO THE MAGISTRATE JUDGE'S**
**<u>REPORT AND RECOMMENDATION</u>**

COME NOW Plaintiffs Deborah Weymouth *et al.* (collectively "Plaintiffs"), by counsel, pursuant to 28 U.S.C. § 636(b) and object to Magistrate Judge Young's Report and Recommendation ("Report") [ECF No. 37] recommending granting Defendant's Motion for Summary Judgment [ECF No. 20], in part, as to the issue of Defendant's violation of the FLSA overtime requirement; or in the alternative granting Defendant's Motion for Summary Judgment as to the issues of willfulness and liquidated damages. In support thereof, Plaintiffs state as follows:

**<u>Standard of Review</u>**

Pursuant to 28 U.S.C. § 636(b), objections to the Report shall be reviewed *de novo*.

1

## I. OBJECTIONS TO REPORT

Plaintiffs object to the Report's recommendation to grant Defendant's Motion for Summary Judgment as to the issues of Defendant's violation of the FLSA overtime requirement, willfulness, and liquidated damages. *Report* at 61. The Report is well-reasoned, but applies the incorrect standard at the summary judgment stage in that it fails to view all facts in the light most favorable to plaintiffs opposing summary judgment. The Report gives no weight to some of Plaintiffs' evidence, accepts Defendant's evidence as dispositive, and draws inferences in favor of the Defendant rather than Plaintiffs.

Summary judgment should only be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, "all reasonable inferences drawn from the evidence must be viewed in the light most favorable to the party opposing the motion." *Nguyen v.CNA Corp.*, 44 F.3d 234, 235 (4th Cir. 1995). A court is not to make credibility determinations, weigh the evidence, or draw legitimate inferences from facts, as those are functions for the fact finder. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. Thus, a court "*must disregard* all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." (emphasis added and internal citations omitted.) *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 151(2000). Therefore, judgment as a matter of law is only "proper when, without weighing

the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." *Worldwide Network Servs., LLC v. DynCorp Int'l, LLC*, 365 F. App'x 432, 442(4th Cir. 2010). When considering cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). The court "must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Id*.

a. **The Report Fails to Consider Evidence in the Light Most Favorable to Plaintiffs**

The issue in this case involves Defendant's treatment of Fire Captains as exempt executives, though they function as "working foremen," actively engaged in firefighting duties that are considered non-exempt. 29 C.F.R. §541.115(a). Plaintiffs contend, supported by a factual record, that their primary duty is fighting fires. Given their actual duties, the issue of "primary" duty is one of fact – as such, genuine issues of material fact exist on this point. Moreover, as an affirmative defense to FLSA liability, Defendant bears the additional burden on summary judgment of demonstrating its entitlement to the executive exemption by clear and convincing evidence.

The record demonstrates a factual dispute in how Defendant's Fire Captains are treated for their mandated dual role, or working foreman, in the non-exempt role of fighting fires and exempt role of supervision. In reviewing the FLSA's duties test, the Report does not follow accepted Department of Labor analysis of supervisors who also perform substantial amounts of time in non-exempt duties. While citing *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822

(10th Cir. 2012), the Report fails to identify the factual dispute inherent in key language in *Maestas*:

> For field supervisors like plaintiffs, who direct the work of subordinates but also perform at least some first responder duties themselves, the distinction appears to be quite fine. On one hand, directing the work of subordinates while simultaneously performing first responder activities does not qualify as a managerial duty. On the other hand, "directing operations" at an emergency scene is a managerial duty. The distinction appears to hinge on whether the supervisors engage in the same front-line activities as their subordinates on a daily basis.

664. F3d at 829.

Here, Plaintiffs present a factual record which demonstrate, or, at a minimum, create genuine issues of material fact on the degree to which they "engage in the same front-line activities as their subordinates on a daily basis." The Report impermissibly weighs facts in favor of the moving party's factual view, ignoring the facts presented which demonstrate that Henrico Fire Captains perform *identical* work to non-exempt firefighters and fire lieutenants. Pl. Mem. in Opp. to Sum. J. at pp. 10-13 (*"Fire Captains Perform the Same Duties as Firefighters and Lieutenants"*).

Uniquely, in this case, the duties analysis of the functions of Defendant's fire captain position, which requires that such captains fight fires in the field, must be viewed through the lens of the First Responder regulation, 29 C.F.R.§ 541.3(b), enacted in 2004 in response to providing additional overtime coverage to First Responders in the wake of the 911 tragedy. For example, the resolution of a key factual dispute in this case lies in the treatment of time in preparation for emergency responses and whether this time is counted as exempt "managerial," non-exempt time required for non-exempt First Response, or blended "working foreman" type work. The primary duty of a fire station is emergency response. No administrative or managerial function takes priority over this duty. In order to respond at an instant's notice, when

4

the buzzer sounds, units must be prepared to 'roll' immediately. Therefore, much of the 'preparedness' time is emergency response preparedness and within the First Response function. Plaintiff's facts presented support this view of the facts. Pl. Mem. in Opp. to Sum. J. at pp. 10-13.

The Report fails to address this core issue as a material factual dispute, but suggests that the First Responder regulation must be considered *only after* resolution of primary duty analysis, and not as part of the fundamental inquiry into the duties analysis of the position itself. This tiered typed review relegates the First Responder regulation to an afterthought and removes the emphasis the Department of Labor placed on the regulation in 29 C.F.R. § 541.3(b) "regardless of rank or pay level." In doing so, the Report and Recommendation accepts Defendant's view of 'relative importance' (one factor of the analysis), and ignores the relative importance of the function, as determined by the *nature of the actual first response duties performed* (a broader view of the 'importance' factor also considering duties performed, another factor). *See Report* at pp. 38-39, 43-44.

Plaintiffs do not contend that the First Responder Regulation is a "trump card" (see Report at p. 40); yet, the duties test for first responder Fire Captains must not be a blinders view that ignores the actual first response function that Fire Captains perform on a daily basis – or, as the *Maestra* court wrote, the key inquiry *must* be "whether the supervisors engage in the same front-line activities as their subordinates on a daily basis." Henrico Fire Captains do, and the record is in dispute on this point.

In recommending Defendant's motion be granted, the Report fails to resolve factual disputes in the light most favorable to the Plaintiffs. The Report urges that a close case be

resolved in summary fashion, with many inferences given Defendant while disregarding facts on which Plaintiffs rely.

Adopting Defendant's argument, the Report emphasizes that some of the Captains' duties are theoretically optional, suggesting that fire captains may choose whether or not to perform such duties, but fails to give credence to Plaintiffs' controverting facts that functionally, these duties have been – and are – required of fire captains. As such, the Report discussion of duties focuses on the Defendant's *expectations* of Fire Captains (largely a function of review of Defendant's job descriptions), while failing to recognize factual disputes regarding the duties *actually performed* by Captains.[1] This is the essence of the duties test that the Report recognizes as controlling. *See Report* at pp. 39-42. The result is that an employer defendant may avoid an objective review of what occurs with a subjective statement of 'this is what I, as employer, value most.' This turns the FLSA's default view that overtime is due to employees – and that an employer must demonstrate by clear and convincing evidence its position that it may avoid an overtime obligation through an exemption – on its head.

When determining whether an employee is a *bona fide* executive, "courts cannot rely upon the plaintiff's or the employer's description of the plaintiff's position or authority; instead [courts] must look at the plaintiff's actual duties" to determine whether she qualifies for the executive exemption." *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 503 (6th Cir. 2007); *see also Walton v. Greenbrier Ford, Inc.*, 370 F.3d 446, 453 (4th Cir. 2004) ("courts must

---

[1] Indeed, a comparison of Defendant's and Plaintiffs' statements of facts suggests that, in Defendant's view (adopted in the Report and Recommendation), very little of the Fire Captain position involves the actual preparedness for, or active engagement in, first response duties – Plaintiff has presented a significant record of the actual duties performed by fire captains. This presents a fundamental factual dispute which Defendant fails to meet by its clear and convincing standard to satisfy the summary judgment burden.

focus on the actual activities of the employee in order to determine whether or not he is exempt from FLSA's overtime regulations") (*quoting Ale v. TVA*, 269 F.3d 680, 688-89 (6th Cir. 2001)).

The Report's reliance on Defendant's subjective view of its expectations of Captains and the job title's ultimate responsibilities is clear and unmistakable. *See Report* ¶¶ 7, 29, 48, 49, 51, 69, 96. However, the Report does not take into account controverting portions of the record that, when viewed in the light most favorable to Plaintiffs, would allow a reasonable fact finder to conclude that Plaintiffs *actual* job duties required and, in practice, performed on a daily basis, are far more heavily weighted toward first responder duties than Defendant's stated expectations suggest.

The Report finds that "Captains are given 'broad discretion' to choose not to respond to calls." *Report* at 11; ¶ 26. However, this fact is disputed by the testimony of Battalion Chief, and former Captain, Gary Samuels who testified that Captains are "expected to be ready 100 percent of the time to respond to calls, to pull hose, to do any EMS duties that's required." *See Pls.'Mem*. at 3; ¶ 7 (ECF No. 23); Samuels Dep. 28:12-29:10 (ECF No. 23-6). Further, Hughes testified that his station responds to 10 to 15 emergency calls per shift and that he personally responded to those calls. Hughes Dep. 233:12-19 (ECF No. 24-1). Weymouth testified that responding to emergency calls takes priority over other duties. Weymouth Dep. 195:10-18 (ECF No. 24-2). A reasonable fact finder could conclude that functionally, Captains do not have discretion in whether to respond to calls and are, in fact, required to respond when calls come into the station.

Further, the Report cites testimony from Assistant Fire Chief Baxter for the proposition that Captains have discretion not to respond to emergency calls. *Report* at 11; ¶ 26. However,

Baxter was designated as a "regular" fact witness and not a 30(b)(6) witness and therefore does not speak for the County. Under the *Reeves* standard, a fact finder is not required to believe testimony that comes from interested parties. Baxter, as an Assistant Chief who is high in the Department's chain of command is an interested witness. *Reeves*, 530 U.S. 133, 151(2000) (A "court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses."). Plaintiffs have also produced facts that, despite a hypothetical authority to decline to respond to calls, they do indeed respond to calls.

The Report finds that "Fire Captains are responsible for apportioning the work among the three shifts," and that the "Fire Chief expects Fire Captains to apportion preplanning work among shifts and ensure that such work is satisfactorily completed." *Report* at 5; ¶¶ 7, 29. While Fire Captains may have authority to apportion work, the frequency with which they actually perform this duty is disputed by evidence in the record. Thus, a jury could draw the inference (in favor of the Plaintiffs) that Captains rarely, if ever, perform this duty. Plaintiffs have testified that the assignment of daily operational jobs have "been around forever" (Hughes Dep 163:8-13 (ECF No 24-1)), that lieutenants typically coordinate the functions of each shift (Weymouth Dep. 23:7-24 (ECF No. 24-2)), and that preplans are predetermined rather than being assigned by Captains (*Id*. 82:1-19). Spencer testified that he inherited the apportioning of preplans at his station and has not reapportioned it. Spencer Dep. 112:1-6 (ECF No. 24-4). Redford testified that apportioning work could be the duty of a Captain, but it was a duty that he did not perform at two of the three stations where he had worked. Redford Dep. 63:10-22 (ECF No. 24-3). As such, a key area of dispute exists over how employees spend their time, and therefore is a question of fact. *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714

(1986) ("The question of how the respondents spent their working time…is a question of fact."). A fact finder could reasonably conclude that apportioning work was not a duty performed by Captains.

The Report finds that Defendant "expects Captains to act as the single point of command, communication, and oversight for each station." *Report* at 14; ¶ 48. The Report acknowledges that "Lieutenants or Firefighters take on some of the Captains' duties when he is not present at the station." *Report* at 14-15, FN 11. However, the Report does not draw the reasonable inference in Plaintiffs' favor that while the County *expects* Captains to "act as a single point of command, communication, and oversight," in reality other individuals actually fill that role two-thirds of the time during shifts when, factually and due to County mandated schedules, Captains are regularly not present at the station. When asked what the impact would be on fire stations if the Captain position was eliminated, Hughes testified "Zero." Hughes Dep. 230:14-231:5 (ECF No. 24-1). He added that "fire houses can run on themselves with the lieutenants and the officers that are there…the fire houses themselves and the operations, they run themselves now." *Id*. As such, taking Defendant's stated expectations of Captains at face value ignores the factual reality of Plaintiffs' jobs. *See Thomas,* 506 F.3d 496, 503 ("courts cannot rely upon the plaintiff's or the employer's description of the plaintiff's position or authority; instead [courts] must look at the plaintiff's actual duties" to determine whether she qualifies for the executive exemption."). A reasonable fact finder could conclude that despite the County's expectations of Captains, Captains do not, in reality, act as a "single point of command, communication, and oversight."

The Report further finds that

> Captains are ultimately responsible for developing, reviewing, and forwarding up the chain of command budgets for specialty shops that operate out of their stations. Captains may assign or delegate preliminary

9

> budget development to their subordinates; however, Captains remain "ultimately responsible" for their budgets and are responsible for keeping their shops within budget.

*Report* at 16; ¶ 51 (internal citations omitted). Again, Plaintiffs have produced facts that demonstrate a different factual conclusion, that Captains play a limited role in planning and controlling any station budget. Fire Captains have little role in operational budgets (payroll, equipment, etc.) and are only involved in budgeting to the extent that they house a specialty shop. Weymouth testified that firefighters assigned to the station's specialty shops compile the budgets, and then only to pass up the chain of command, where it is eventually approved. Weymouth Dep., 122:7-25 (ECF No. 23-3). When asked if it was her ultimately responsibility to provide a station budget, she testified "To turn one in, yes." Spencer testified that preparing the budget narrative was a group effort and that it is his responsibility to review it and send it up the chain of command. Spencer Dep. 91:16-92:12 (ECF No. 24-4). Taking this testimony in the light most favorable to Plaintiffs, a fact finder could reasonably conclude that Captains are not ultimately responsible for the station's budget, but merely pass the budgets up the chain of command to the chief-level command staff who are ultimately responsible for budgets.

The Report finds that "Captains are expected to direct the work of all personnel assigned to their stations." *Report* at 21; ¶ 69. However, Plaintiffs have produced facts showing that, despite the County's subjective expectations, much of the work is directed by non-exempt lieutenants. Weymouth testified that lieutenants typically coordinate the functions of each shift. Weymouth Dep., 23:7-19 (ECF No. 24-2). She also testified that Captains have little effect on the operations of the fire station. Weymouth Dep. 168:12-169:17 (ECF No. 23-3). A reasonable fact finder could easily conclude that the County's expectations are not aligned with the actual job duties Plaintiffs perform.

The Report finds that "[s]ome housework, such as cleaning bathrooms, is generally 'reserved just for the rookies,' although a Captain can also perform that work." *Report* at 8; ¶16. It further states that a "Captain's involvement in housework 'depends entirely on the day…from no involvement at all…to participating in all of the other activities. *Id*. at 9; ¶ 18. However, these factual findings are disputed by Lieutenant Donnie Deaver's testimony that Captains perform the same daily operations duties including training, cleaning, mowing the lawn, cleaning windows and refrigerators, and grocery shopping. *See Pls.' Mem.* at 6; ¶ 29 (ECF No. 23); Deaver Dep. 46:2-49:1 (ECF No. 23-5). A reasonable fact finder could conclude that Fire Captains spend a large portion of their time performing the same housework duties as non-exempt firefighters and lieutenants.

These facts, taken together, and viewed in the light most favorable to Plaintiffs allow a fact finder to find that Captains' actual job duties are not those of an exempt executive, but are the same duties performed by non-exempt firefighters and lieutenants. In reviewing Defendant's motion for summary judgment, the Court "must disregard all evidence favorable to the moving party that the jury is not required to believe."

### b. LIQUIDATED DAMAGES

The FLSA states that an employer found to have violated Section 6 or 7 of the Act "shall be liable" to the employee for unpaid overtime compensation and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "Double damages are the norm" in overtime cases, and single damages are "the exception." *Avitia v. Metropolitan Club*, 49 F.3d 1219, 1223 (7th Cir. 1995). The purpose behind liquidated damages is to compensate prevailing plaintiffs for losses incurred because they did not receive payments to which they were legally entitled when such payments were due. 29 CFR §790.22(a) n.137; *Overnight Motor Transp. v. Missell*, 316

U.S. 572, 583-84 (1942). Liquidated damages are mandatory under the FLSA absent a showing of affirmative good faith on the part of the employer. Even if an employer shows good faith, "the court is permitted, but not required…to reduce or eliminate the liquidated damages." 29 CFR §790.22(b). As the district court in *Troutt v. Stavola Bros.* explained, awarding liquidated damages "is mandatory, but may become discretionary if the employer can" overcome the "plain and substantial burden of proving that its actions were objectively reasonable and prompted solely by good faith to avoid imposition of liquidated damages." 905 F. Supp. 295, 302 (M.D.N.C. 1995). A showing of good faith "requires some duty to investigate potential liability under the FLSA." *Id.* An employer cannot "simply remain blissfully ignorant of FLSA requirements" and avoid liability for liquidated damages. *Burnley v. Short*, 730 F.2d 136, 140 (4th Cir. 1984).

Here, Plaintiffs have produced evidence that Defendant cannot meet the "substantial burden" of proving good faith and avoiding liquidated damages. Plaintiffs have provided facts show active attempts to subvert Defendant's obligation to pay overtime. Defendant's own internal documents contain numerous articles that demonstrate its awareness that fire captains should, presumptively, be considered entitled to overtime. *See* ECF No. 24-12 through 24-15. However, Defendant ignored these articles and clung to its self-serving conclusion that Fire Captains were properly classified as exempt from FLSA overtime requirements. Even though many other Virginia localities have reclassified their Fire Captains as non-exempt in response to the 2004 First Responder Regulation, the County did nothing to review the exempt status of its Fire Captains. The question of whether Defendant acted in good faith in classifying its Captains, or whether they essentially attempted to twist the law to fit their predetermined notion the Captains should be exempt, is a question of fact.

Further, even if the Court finds that Defendant acted in good faith, Defendant should not be entirely relieved of its obligation to pay liquidated damages. The Court in *Lanza v. Sugarland Run Homeowners Association, Inc.*, 97 F. Supp. 2d 737 (E.D. Va. 2000), recognized that relief under the FLSA is "compensatory in nature, designed to put the plaintiff in the place she would have been absent the employer's misconduct." *Id*. at 740. Liquidated damages are "designed to compensate the employee for damages 'too obscure and difficult of proof of estimate other than by liquidated damages.'" *Id*. (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)). The Supreme Court has elaborated:

> It constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living "necessary for health, efficiency and general well-being of workers" and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being. Employees receiving less than the statutory minimum are not likely to have sufficient resources to maintain their well-being and efficiency until such sums are paid at a future date.

*Brooklyn Savings*, 324 U.S. at 707-708. Recovery of liquidated damages are "compensation for damages arising from delay in the payment." *Id*. at 715. Therefore, even if the Court finds that Defendant acted in good faith, Captains should still receive a portion of liquidated damages to compensate them for the years-long delay in payment of overtime wages.

### c. WILLFULNESS

The FLSA's two year statute of limitations is extended to three years upon a showing that the employer's violation was willful. An FLSA violation is considered "willful" if the employer is either reckless with regard to whether its conduct complies with known provisions of the FLSA, or is reckless with regard to determining its obligations under the FLSA. *Chao v. Self Pride, Inc.*, 232 F. App'x 280, 287 (4th Cir. 2007). Whether an employer willfully violated the FLSA is a question of fact to be determined by the fact finder. *Fowler v. Land Mgmt. Groupe,*

*Inc.*, 978 F.2d 158, 162 (4th Cir. 1992) (" In general, issues of fact bearing on the application of a statute of limitations are submitted, as are other issues of fact, for determination by the jury.").

While Plaintiffs have the burden to establish willfulness by a preponderance of evidence, there is substantial evidence showing the County's disregard for its obligations under the FLSA. The issue of willfulness is independent of good faith; however, much of the same evidence demonstrating the County's lack of good faith also demonstrates willful conduct. *See Fowler* at 162 (explaining that the issues of good faith and willfulness are distinct issues).

Defendant's willful avoidance of its overtime obligations is evidenced by the fact that in determining that Captains are not eligible for overtime, it placed its subjective view of what Captains' role should be over the actual duties performed as is required by the FLSA. Reid Dep. 123:7-16 (ECF No. 23-7). Defendant was aware that first responder firefighters were presumptively entitled to overtime under the 2004 First Responder Regulation, but it did not undertake any analysis to determine the actual time that Captains spend performing first responder duties, nor comparing the amount of time Captains spend performing first response duties relative to non-exempt firefighters and lieutenants. Reid Dep. 72:3-25; 121:21-122:6 (ECF No. 23-7). Moreover, the County made no further review of its exempt classification of Captains even as other localities across Virginia reclassified Captains as non-exempt in light of the 2004 regulations amendments. A jury could reasonably conclude that the County's classification of Captains was predetermined and that it willfully denied Plaintiffs non-exempt status and overtime compensation.

## II. CONCLUSION

The Report applies the incorrect standard at the summary judgment stage in that it fails to

14

view all facts in the light most favorable to Plaintiffs. The Report gives no weight to Plaintiffs' evidence and fails to follow the mandate of *Reeves* to "disregard all evidence favorable to the moving party that the jury is not required to believe." Therefore, the Court should enter and Order denying Defendant's Motion for Summary Judgment.

        Respectfully submitted,
        DEBORAH WEYMOUTH and JAMES
        REDFORD, on behalf of themselves and others
        similarly situated

        Plaintiffs

By:   /s/_____
        Craig Juraj Curwood (VSB No. 43975)
        Philip Justus Dean (VSB No. 86335)
        Attorneys for Plaintiffs
        Curwood Law Firm, PLC
        530 E. Main Street, Suite 710
        Richmond, VA 23219
        Telephone: (804) 788-0808
        Fax: (804) 767-6777
        ccurwood@curwoodlaw.com
        pdean@curwoodlaw.com

        Harris D. Butler, III, (VSB No. 26483)
        Zev H. Antell (VSB No. 74634)
        Butler Royals, PLC
        140 Virginia Street, Suite 302
        Richmond, Virginia 23219
        Tel:   (804) 648-4848
        Fax:  (804) 237-0413
        harris.butler@butlerroyals.com
        zev.antell@butlerroyals.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of September 2015, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following::

> Joseph P. Rapisarda, Jr.,
> Lee Ann Anderson
> County of Henrico
> P.O. Box 90775
> Henrico, VA  23273-0775
> rap@henrico.us
> and93@henrico.us
> har55@henrico.us
>
> *Counsel for Defendant County of Henrico, Virginia*

                                                                ____/s/_____
                                                     Philip Justus Dean (VSB No. 86335)
                                                     Curwood Law Firm, PLC
                                                     530 E. Main Street, Suite 710
                                                     Richmond, VA 23219
                                                     Telephone: (804) 788-0808
                                                     Fax: (804) 767-6777
                                                     pdean@curwoodlaw.com